IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) No. 16 C 50248 |
| v. | ) |
| | ) Hon. Virginia M. Kendall |
| WILLIE JONES. | ) |
| | ) |

### MEMORANDUM OPINION AND ORDER

Petitioner Willie Jones ("Jones") moved to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging that the district court[1] applied sentencing enhancements for possession of device-making equipment, the calculation of the number of victims, and his leadership role in the scheme improperly; miscalculated his advisory guidelines range; and that his counsel was ineffective. For the reasons stated herein, Jones's Motion is denied.

### BACKGROUND

The relevant facts relating to Petitioner's criminal conviction, which are undisputed, are largely set forth in a published opinion by the Seventh Circuit Court of Appeals, *see United States v. Jones*, 792 F.3d 831, 833 (7th Cir.), cert. denied, 136 S. Ct. 435, 193 L. Ed. 2d 338 (2015), and are repeated here only as they pertain to Petitioner's § 2255 petition.[2] *See, e.g., Webster v. Daniels*, 784 F.3d 1123, 1125 (7th Cir. 2015).

Beginning in April 2008, Jones and his codefendants Jackson, Foster, and Norsworthy, participated in a scheme to fraudulently obtain funds from a number of large banks (the "Victim

---

[1] Jones was sentenced by the Honorable Milton Shadur.
[2] When necessary, the Court also cites to the record in Jones's underlying criminal case, *United States v. Jones*, No. 11 CR 469-1 (N.D. Ill).

1

Banks") through the use of stolen personal information. *Jones*, 792 F.3d at 833. Jones and Jackson would steal personal information by pickpocketing or buying stolen wallets and then create counterfeit driver's licenses and checks on a computer and then direct female "writers" to cash fraudulent checks against the victims' bank accounts. *Id.* Jones's role in the scheme was significant; he trained all of the check writers and recruited all but two of them, provided the writers with the fake IDs, decided which banks to target, transported the writers to the banks, and decided how to divide the proceeds of the scheme. *Id.* at 833-34.

Jones and his co-schemers ultimately stole the identities of at least sixty people and produced at least sixty counterfeit identification documents in order to obtain funds from the victims' bank accounts. *Id.* at 833. The scheme ended in March 2011 and resulted in a total loss of approximately $770,000. *Id.* On April 26, 2012, a grand jury returned an indictment, charging Jones with ten counts of bank fraud, in violation of 18 U.S.C. § 1344, and one count of aggravated identify theft, in violation of 18 U.S.C. 1028(a)(1) and 2. *Id.* at 834.

While on bond, Jones was arrested for stealing wallets in order to use credit cards to make fraudulent purchases. *Id.* Jones's bond was revoked on February 14, 2013, and he was remanded into federal custody. *Id.* Jones entered a guilty plea without a plea agreement to Count One (bank fraud) and Count Ten (aggravated identify theft) on March 7, 2014. *Id.*

At sentencing, the district court heard testimony from several witnesses, including two of Jones's codefendants. *Id.* Through counsel, Jones objected to certain enhancements when calculating the guidelines range. *Jones*, 792 F.3d at 834. Jones first argued that for purposes of the guidelines calculation, the victims of the scheme consisted of only those that were not reimbursed. *Id.* at 836. The district court disagreed and applied the 2013 Guidelines Manual § 2B1.1(4)(E) which defines "victim" as "any individual whose means of identification was used

unlawfully or without authority." Advisory Guideline § 2B1.1(4)(E)); *id.* The district court concluded that the individuals from whom Jones stole money amounted to more than fifty victims but less than 250 victims, warranting a four-level enhancement under § 2B1.1(b)(2)(B). *Jones*, 792 F.3d at 836; *see also* U.S.S.G. § 2B1.1(b)(2)(B) ("If the offense involved 50 or more victims, increase by 4 levels . . . .").

Jones also objected to the two-level enhancement for possession of device-making equipment. *Jones*, 792 F.3d at 835. In response, the Government called two of Jones's co-schemers, Ilene Foster and Darrell Jackson, at the sentencing hearing. Sentencing Hearing Transcript at 31, 69, 96, *United States v. Jones*, No. 11 CR 469-1, (N.D. Ill. Nov. 5, 2014). Both Foster and Jackson testified that Jones provided the fake identification cards to the writers. *Id.* at 40. Foster also testified that she saw the machines that made the fake IDs. *Id.* at 64. The Court rejected Jones's argument and applied the two-level enhancement for possession of device-making equipment. *Id.* at 9.

Finally, Jones objected to the four-level enhancement for his leadership position. *Id.* at 10. The police officer who arrested Jones while he was out on bond, Christopher Burne, testified that a female suspect informed him that Jones was the ringleader of the scheme. *Id.* at 101. After considering the sentencing memoranda and this testimony, the district court found that the leadership enhancement applied. *Id.* at 9.

In calculating the advisory sentencing guidelines, the district court accepted Jones's argument that there was a misapplication of criminal history points for counting an offense that was committed more than 15 years prior to the offense at issue. *Id.* at 17. This placed Jones at twelve criminal history points, rather than fifteen, as stated in the presentencing report. *Id.* The district court then added the two-level enhancement for possession of device-making equipment

3

under U.S.S.G. § 2B1.1(b)(11), the four-level enhancement for involvement of more than fifty victims under U.S.S.G. § 2B1.1(b)(2), a two-level enhancement for theft from the person of another under U.S.S.G. § 2B1.1(b)(3), and a four-level enhancement based on the finding that Jones was the leader of criminal activity involving more than five participants under U.S.S.G. § 3B1.1. *Id.* at 10. Because Jones fell within Criminal History Category V and had an offense level of thirty, the district court calculated the guideline sentencing range to be 151-188 months. *Id.* at 19. Ultimately, after considering the § 3553 factors as required, the court imposed a sentence of 160 months for bank fraud in Count One, to be served consecutive to the statutorily required 24-month sentence for aggravated identity theft as charged in Count Ten. *Id.* at 140.

Jones filed a timely notice of appeal on September 23, 2014, challenging his sentence on five grounds alleging that the district court: (1) erred when it failed to consider codefendants' sentences to avoid unwarranted sentencing disparities; (2) erred in applying the possession of device-making equipment enhancement; (3) erred in calculating the number of victims; (4) erred in applying the leader/organizer enhancement; and (5) that in light of 18 U.S.C. § 3553(a), his sentence was unreasonable. *Jones*, 792 F.3d at 834.

The Seventh Circuit affirmed the sentence and rejected all of Jones's arguments including the sentencing disparity noting that the district court had expressly addressed the avoidance of unwarranted sentencing disparities and justified any disparities by emphasizing the differing conduct between the defendants. *Id.* at 837. The Seventh Circuit affirmed the enhancement for possession of device-making equipment because Jones's computer was equipped with state identification templates that were used to produce fake IDs for the writers he directed. *Id.* at 835-36. The Seventh Circuit agreed with the district court's application of the victim enhancement and rejected Jones's interpretation of the enhancement as being in contradiction to

the definition of "victim" provided in Application note 4(E) to U.S.S.G. § 2B1.1(b)(2). *Id.* at 836. The Seventh Circuit also confirmed the court's application of the leader enhancement because Jones played a larger role than Jackson through active recruitment of writers and selection of the target banks. *Id.* Finally, the Seventh Circuit held that Jones's sentence was reasonable and found that the district court adequately considered mitigating factors, the nature of the offenses, the impact on the victims, and Jones's criminal history—demonstrating that the court considered each of the § 3553(a) factors in imposing a within-Guidelines sentence. *Id.* at 836-37. Jones appealed to the United States Supreme Court but his application for a writ of certiorari was denied. *United States v. Jones*, 136 S.Ct. 435 (2015).

Jones filed this petition pursuant to § 2255 on July 22, 2016, alleging two of the same claims that were already rejected by the Seventh Circuit, specifically that the district court erred in applying the two-level enhancement for use of device-making equipment and erred in applying the number of victims enhancement. He added two new claims; specifically that the Seventh Circuit calculated the offense level different from the district court and that counsel was constitutionally ineffective. (Dkt. 3 at 4-12.) On December 16, 2016, Jones filed a Motion for Leave to File an Amended Petition pursuant to Federal Rules of Civil Procedure Rule 15(c)(1)(B), in which he argues that counsel was ineffective both at trial and on appeal in representing Jones in regards to enhancement for theft from the person of another under § 2B1.1(b)(3). (Dkt. 12.); Fed. R. Civ. P. 15(c)(1)(B). On June 14, 2017, Jones filed a second motion for leave to amend his § 2255 petition pursuant to Rule 15(c)(1)(B), arguing that counsel was ineffective in challenging the enhancement based on possession of device-making equipment. (Dkt. 19.) Although neither amended petition is properly before the Court, the Court has reviewed all three in reaching its conclusion.

**STANDARD OF REVIEW**

Under § 2255, a federal prisoner may move the district court that imposed his or her sentence to vacate it, set it aside, or correct it. *See* 28 U.S.C. § 2255. Such a motion seeks "an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). In order for a federal prisoner to obtain relief under § 2255, "he must show that the district court sentenced him 'in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" *Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (quoting 28 U.S.C. § 2255).

**DISCUSSION**

I.  **Challenges to Sentencing Guidelines Enhancements**

   A. Jones's challenges to the Guideline enhancements are not cognizable under § 2255.

Section 2255 permits a court to grant relief where "the sentence was imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §2255 (2012).

It is undisputed that "[a] claim that the judge misapplied the Sentencing Guidelines does not challenge the jurisdiction of the court or assert that the judge exceeded the statutory maximum." *Scott v. United States*, 997 F2d 340, 341 (7th Cir. 1993). Moreover, because there is "no constitutional issue" raised in a challenge to the application of the Sentencing Guidelines, "errors in the implementation of the Sentencing Guidelines are generally not cognizable under collateral attack." *Buggs v. United States*, 153 F.3d 439, 443 (7th Cir. 1998) (citing *Scott v.*

*United States*, 997 F.2d 340, 341-43 (7th Cir. 1993)). The Supreme Court "has never approved the use of collateral relief for *any* non-constitutional error that does not deprive the court of jurisdiction." *Scott*, 997 F.2d at 342 (citing *Reed v. Clark*, 984 F.2d 209, 210-11 (7th Cir. 1993)). In fact, "'only a complete miscarriage of justice' or a 'proceeding inconsistent with the rudimentary demands of fair procedure' could support post-judgment relief . . . ." *Scott*, 997 F.2d at 342 (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

Furthermore, because the sentencing guidelines are advisory even an erroneous calculation is not cognizable under § 2255. *Hawkins v. United States*, 706 F.3d 820, 822 (7th Cir. 2013); *see also United States v. Booker*, 543 U.S. 220 (2005). In fact, "[n]ot only do the guidelines no longer bind the sentencing judge; the judge may not even *presume* that a sentence within the applicable guidelines range would be proper." *Hawkins*, 706 F.3d at 822. Judges are instead obligated to consider whether a sentence is consistent with the factors set forth in 18 U.S.C. § 3553(a), and the result of such a consideration will simply not create a complete miscarriage of justice or a proceeding inconsistent with the rudimentary demands of fair procedure. *Id.*

Even if the Court were to address those claims, they are also procedurally defaulted because he has already appealed those claims to the Seventh Circuit where they were rejected. In his initial petition, Jones seeks relief pursuant to § 2255 on two challenges to guidelines enhancements imposed during sentencing: (1) that his sentence was unlawfully enhanced for possession of device-making equipment, and (2) that his sentence was unlawfully enhanced based on the calculation of the number of victims. (Dkt. 1 at 4, 5; Dkt. 3 at 4, 6.) He also attacks an alleged disparity between the district court and Seventh Circuit in calculating the guidelines range. In his motion for leave to file a first amended petition, Jones further argues that the

enhancement for theft from the person of another under § 2B1.1(b)(3) was inappropriate. (Dkt. 13.) In his motion for leave to file a second amended petition, Jones argues that his counsel was constitutionally ineffective in relation to enhancement arguments. (Dkt. 19.)

To the extent that Jones now alleges one new claim regarding the enhancement for theft from another, that claim was never presented on direct appeal and therefore it is defaulted. *See Ballinger v. United States*, 379 F.3d 427, 429 (7th Cir. 2004). Even if it were to be presented, it does not raise a constitutional claim. Even if the district court made some error in calculating the advisory range, which it did not, such a claim is not cognizable in a § 2255 petition. *See Hawkins*, 706 F.3d at 824-825 ("[W]e don't think that a sentence that is well below the ceiling imposed by Congress whether directly or by delegation to the Sentencing Commission should . . . be considered a 'miscarriage of justice' that can be collaterally attacked. . . . That's the balance the cases strike between the interest in finality and the injustice of a possibly mistaken sentence"); *see also United States v. Coleman*, 763 F.3d 706, 710 (7th Cir. 2014) ("[E]ven errors that are not harmless may not be cognizable in a § 2255 proceeding."); *Welch v. United States*, 604 F.3d 408, 412 (7th Cir. 2010) ("[D]eviations from the Sentencing Guidelines generally are not cognizable on a § 2255 motion."). As a result, Jones's arguments related to the sentencing guidelines fail.

B. A claim raised on direct appeal cannot be relitigated

Even if Jones's challenges to the guidelines calculations raised a constitutional question or demonstrated that he is suffering from a complete miscarriage of justice suitable for consideration under § 2255, his sentencing arguments would still be fatally flawed because a claim raised on direct appeal cannot be relitigated. It is well established that "a section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." *Olmstead v. United*

*States*, 55 F.3d 316, 319 (1995) (citing *Daniels v. United States*, 26 F.3d 706, 711 (7th Cir. 1994)). It has therefore long been the case that "issues 'raised on direct appeal may not be reconsidered on a § 2255 motion absent changed circumstances.'"). *Vinyard v. United States*, 804 F.3d 1218, 1227 (2015) (citing *Varela v. United States*, 481 F.2d 932, 935 (7th Cir. 2007)).

On direct appeal in September 2014, Jones challenged his sentence on the grounds that the district court erred in applying the possession of device-making equipment enhancement as well as on the grounds that the district court erred in calculating the number of victims. *Jones*, 792 F.3d at 835-36. The Seventh Circuit squarely rejected both of these challenges and affirmed the sentence. *Id.*

In his challenge to the possession of device-making equipment enhancement, Jones relies on *United States v. Doss*, in which the Seventh Circuit held that the imposition of a sentencing enhancement for the trafficking of any unauthorized device where the trafficking also constituted a transfer of a means of identification under U.S.S.G. § 2B1.1(b)(11)(B) is improper. 741 F.3d 763, 767-78 (7th Cir. 2013). Section 2B1.6(a), regarding aggravated identity theft, is accompanied by a note which specifies that "[i]f a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of a means of identification when determining the sentence for the underlying offense." U.S.S.G. § 2B1.6(a) n.2. However, on direct appeal, the Seventh Circuit clearly stated that the holding in *Doss* "is irrelevant where, as here, possession or production acts as the basis for the enhancement, rather than trafficking." *Jones*, 792 F.3d at 836. Therefore, the district court was not barred from imposing a specific offense characteristic for the possession of device-making equipment.

In his challenge to the enhancement based on the calculation of victims, Jones argues that

9

only the nine victims that were not reimbursed should be counted as victims. *Jones*, 792 F.3d at 836. However, after recognizing that note 4(E) of U.S.S.G. § 2B1.1(b)(2) defined victim as "any individual whose means of identification was used unlawfully or without authority," the Seventh Circuit found that the district court did not err in counting reimbursed individuals as victims and rejected Jones's argument. *Jones*, 792 F.3d at 836 (citing *United States v. Panice*, 598 F.3d 426, 433 (7th Cir. 2010)) ("[T]he fact that . . . victims were eventually reimbursed does not negate their victim status."). Because these issues were raised on direct appeal, the Court declines to consider them further.

## II. Due process violation based on calculation disparities between the court of appeals and the district court

Jones also argues that the Seventh Circuit and the district court calculated his total offense level differently, thus warranting a new sentencing hearing. This contention is rooted in his misreading of the Seventh Circuit's decision affirming his sentence. In calculating the sentencing guidelines, the district court determined that Jones was subject to a base offense level of seven under § 2B1.1(a), with a fourteen-level increase for a loss amount of $772,240 under § 2B1.1(b)(1)(H), a four-level increase for an offense involving over fifty victims under § 2B1.1(b)(2)(B), a two-level increase for theft from the person of another under § 2B1.1(b)(3), a two-level increase for possession of device-making equipment under § 2B1.1(b)(11)(A)(i) and (B)(i), and finally a four-level increase for his leadership role under § 3B1.1(a). *Jones*, 792 F.3d at 834. The calculation also included a two-level decrease for acceptance of responsibility under § 3E1.1(a), and a one-point decrease for timely acceptance under § 3E1.1(b), ending with a total offense level of 30.

When discussing Jones's sentence, the Seventh Circuit noted:

> The enhancements included a four-level enhancement for

> possession or use of device-making equipment and the production of counterfeit devices, a two-level enhancement for an offense involving more than fifty victims, and a four-level enhancement based on a finding that Jones was a leader or organizer of criminal activity involving five or more participants.

*Jones*, 792 F.3d at 834. Jones incorrectly understands this recitation of enhancements to be exhaustive rather than illustrative, and concludes that the Seventh Circuit calculated his guidelines differently than the district court. Instead, the Seventh Circuit was merely listing the specific enhancements that Jones challenged in his appeal. *Jones*, 792 F.3d at 834. Ultimately, the Seventh Circuit specifically "affirm[ed] the sentence the district court imposed upon Jones." *Id.* at 837. After considering the § 3553 factors, the district court calculated Jones's sentence at an offense level of 30, based on the advisory Sentencing Guidelines, and the appellate court affirmed. *Id.* There were no guidelines calculation disparities, and even if there were, the Sentencing Guidelines are advisory rather than mandatory and such a disparity does not entitle him to relief here nor does it raise any Constitutional violation cognizable in a habeas petition. *Hawkins*, 706 F.3d at 822. Jones's due process was not violated.

## II.     Ineffective Assistance of Counsel

Most likely recognizing that he has either procedurally defaulted his remaining claims or has failed to raise them on direct appeal, Jones attempts to circumvent his failure by alleging various claims of ineffective assistance of counsel that largely mirror his substantive claims and primarily relate to his challenges to various sentencing guidelines enhancements. In his initial petition, Jones argues that his trial counsel was constitutionally ineffective for breach of the duty of loyalty, as his counsel "clearly showed more concern for the (AUSA's) defense than that of the petitioner's, who he was actually supposed [sic] to be representing" and references many of the sentencing enhancement issues discussed above. (Dkt. 3 at 12-18.) In his first amended

petition, Jones argues that counsel was ineffective, both at trial and on appeal, for failing to challenge the enhancement for theft from the person of another under § 2B1.1(b)(3) on the grounds that the 2014 U.S.S.G. manual does not include such an enhancement. (Dkt. 12 at 1.) In his motion for leave to file a second amended petition, Jones argues that counsel was ineffective for failing to challenge the enhancement for possession of device-making equipment. (Dkt. 19 at 1.)

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). However, counsel is not free to act without boundaries. "Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest." *Strickland*, 466 U.S. at 688. In judging the performance of counsel, it has long been the case that "the proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687.

Ultimately, Petitioner is tasked with showing "that his counsel's service did not meet an objective standard of reasonableness and that there is a fair probability that but for his attorney's ineffectiveness, the result of the trial would have been different." *United States v. Meyer*, 234 F.3d 319, 325 (7th Cir. 2000). In short, Petitioner is tasked with showing "both incompetence and prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688). To show incompetence, Petitioner must show that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. "A court need not first determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 670. "Prejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and 'that an actual conflict

12

of interest adversely affected his lawyer's performance." *Strickland*, 466 U.S. at 692 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980).

As an initial matter and as discussed above, all of Jones's claims challenging his counsel's performance regarding arguments regarding the advisory guidelines calculations and the applicability of various enhancements to his sentence are not cognizable under § 2255. *See Hawkins*, 706 F.3d at 824 ("An erroneous computation of an advisory guidelines sentence is reversible (unless harmless) on direct appeal; it doesn't follow that it's reversible years later in a postconviction proceeding.")

Even if the Court were to consider his claims, however, Jones has not shown that "counsel's performance fell below an objective standard of reasonableness as determined by prevailing professional norms" because counsel challenged many of the enhancements Jones points to now and Jones has failed to show how counsel's advocacy on these points was ineffective. *Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004) (citing *Strickland*, 466 U.S. at 687-88). As noted above, counsel filed a sentencing memorandum challenging four of the enhancements to Jones's sentence. At the sentencing hearing, defense counsel argued against application of the enhancements for the total number of victims, use of device-making equipment, and leadership of a criminal organization, as well as the application of criminal history points. *See* Sentencing Hearing Transcript, *United States v. Jones*, No. 11 CR 469-1, (N.D. Ill. Nov. 5, 2014). He again argued on direct appeal the enhancements relating to the number of victims, use of device-making equipment, and role in the offense, along with several other issues related to sentencing. *Jones*, 792 F.3d at 834-35. Jones has not articulated how this advocacy was deficient in any way.

Moreover, Jones has failed to demonstrate that his counsel was ineffective in failing to

make any other sentencing arguments. First, counsel was not ineffective for failing to challenge the enhancement based on theft from the person of another under § 2B1.1(b)(3). Jones was charged with aggravated identity *theft* and entered a guilty plea to the charge on March 7, 2014. (Dkt. 38 at 14; Dkt. 132.) At no point in Jones's proceedings was there doubt that he committed theft from the person of another. As such, to argue that the enhancement for theft from the person of another was wrongfully calculated would have been a frivolous argument not based on fact or law.

Jones also contends that counsel breached "the duty of loyalty" by not challenging his sentencing calculation. (Dkt. 3 at 12.) Specifically, Jones argues that he was sentenced "on the basis of inaccurate information," and that counsel did not effectively challenge the application of enhancements for theft from the person of another and possession of device-making equipment. (Dkt. 3 at 13; Dkt. 12 at 1; Dkt. 19 at 2.) Jones also claims, without support, that counsel "showed apparent sympathy for the prosecution than his client [sic] throughout the proceeding (sentencing)." (Dkt. 3 at 13.)

It is indisputable that "the duty of loyalty is perhaps the most basic of counsel's duties." *United States v. Ellison*, 798 F.2d 1102, 1107 (7th Cir. 1986). However, Jones has failed to provide any evidence to support his contention that counsel was anything but a loyal advocate. In fact, the sentencing calculations were correct under the law and counsel competently argued his client's case.

Indeed, counsel filed a well-written and thoughtful sentencing memorandum articulating Jones's arguments regarding the sentencing guidelines, as well as laying out his troubled upbringing and prominent role in the community. Sentencing Memorandum, *United States v. Jones*, No. 11 CR 469-1, (N.D. Ill. Nov. 5, 2014). At sentencing, counsel echoed those points

and also argued that the calculation of victims should be decreased to include only those banks which were not reimbursed, that there was a lack of evidence to support Jones's possession of device-making equipment, that Jones was not truly the leader of the scheme, and that there was a misapplication of criminal history points. Sentencing Hearing Transcript at 2, *United States v. Jones*, No. 11 CR 469-1, (N.D. Ill. June 11, 2014). The record is void of evidence showing that counsel breached his duty of loyalty. *Ellison*, 798 F.2d at 1107.

Additionally, Jones has not shown that he was prejudiced in any way by counsel's alleged ineffective assistance nor could he. In fact, any claim of prejudice rooted in these issues is destined for failure, as his position requires a complete misreading of the sentencing guidelines. As discussed above, both the enhancement for theft from the person of another under § 2B1.1(b)(3) and possession of device-making equipment under § 2B1.1(b)(11) were properly applied. *See, e.g.*, *Jones*, 792 F.3d at 835-36. Jones's continued reliance on § 2B1.6(a) note 2, which prohibits the application of specific offense characteristics for "transfer, possession, or use of a means of identification" where a sentence is imposed in conjunction with a sentence for the underlying offense is inapplicable in his case. U.S.S.G. § 2B1.6(a) cmt. n.2. The section was found to be applicable, for instance, where one was sentenced for making and selling Chinese passports, and the Seventh Circuit found Note Two to preclude application of an enhancement for conspiracy to commit passport fraud. *United States v. Xiao Yong Zheng*, 762 F.3d 605 (7th Cir. 2014).

In contrast to the clear "double counting" that would have occurred in *Xiao Yong Zheng* absent application of Note Two, Jones engaged in "pickpocketing," which constitutes theft, which is distinct from the transfer, possession, or use of a means of identification referenced in *Xiao Yong Zheng*. (*See* Dkt. 205.) Similarly, the Seventh Circuit found that in relation to Jones,

15

possession of device-making equipment is also distinct from the transfer, possession, or use of a means of identification. *Jones*, 792 F.3d at 836. Instead of possession of a means of identification, Jones was in possession of a *device* which ultimately created fraudulent means of identification. Note Two does not preclude the application of appropriate enhancements that were recommended in the presentencing report, applied by the district court, and affirmed on appeal. (Dkt. 144; Dkt. 205; Dkt. 242.) Even if counsel somehow misstepped, of which there is no evidence, prejudice is absent. The Court denies Jones's claims of ineffective assistance of counsel.

## **CONCLUSION**

For the reasons stated herein, Jones's Motion to Vacate, Set Aside, or Correct Sentence is denied.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: August 8, 2017